*907 BEAM, Circuit Judge.
Petitioner, Josphine Gitau, appeals the Board of Immigration Appeals’ (BIA) March 30, 2007, order denying her motion to reopen and reconsider her removal proceedings and rescind the Immigration Judge’s (IJ’s) in absentia removal order. This appeal contains a great deal of “he said, she said” as to why Gitau did not appear at a February 13, 2006, removal hearing. Applying our abuse of discretion standard to the BIA’s denial, we find there was none.
I. BACKGROUND
A. Notice to Appear
Gitau is a citizen of Kenya who entered the United States on or about November 28, 1998, as a nonimmigrant visitor with authorization to remain in the United States until January 15, 1999. Gitau did not depart on that date. On August 27, 2001, she married Kenneth Kurtz. Kurtz filed an 1-130 Petition for Alien Relative on April 15, 2002, and Gitau then filed an 1-485 adjustment of status application. However, Kurtz withdrew the 1-130 application and thus the INS denied Gitau’s adjustment of status application in September 2002. Immediately thereafter, the INS started removal proceedings against Gitau, serving her with a Notice to Appear as an alien who remained for a time longer than permitted. On November 4, 2002, Gitau, represented by former counsel Samuel Omwenga, appeared at a bond hearing in Kansas City, Missouri.
B. IJ Order of Removal In Absentia
In April 2003, Kurtz filed a second 1-130 on Gitau’s behalf but Kurtz died before it was adjudicated. Thereafter, Gitau appeared at two hearings (May 2003 and September 2004) at which her attorney, Omwenga, appeared telephonically. At the September 2004 hearing, Gitau’s removal case was continued until February 13, 2006. Gitau and Omwenga were orally notified of the February 13, 2006, hearing date. Before February 2006, the pending 1-130 petition was administratively closed due to Kurtz’s death on June 8, 2004. Gitau filed an 1-360 Widower Petition on August 22, 2005, which was approved on March 31, 2006.[1] However, Gitau and Om-wenga both failed to appear at the February 13, 2006, merits hearing on her removal proceedings and the IJ ordered Gitau removed to Kenya in absentia.
C.First Motion to Reopen (Before the IJ)
Through Omwenga, Gitau filed a timely motion to reopen removal proceedings with the IJ on March 31, 2006, based on a claim of exceptional circumstances. In that motion, Gitau claimed that neither she nor Omwenga received written notice of the February 13, 2006, hearing, and, further, that the INS officer told Gitau upon inquiry in December 2005 “that her case was closed.” Gitau misunderstood the officer to mean her removal proceedings when, in fact, the officer likely conveyed to Gitau that the pending 1-130 case was closed following her husband’s death. Further, Gitau claimed in that motion that she also misunderstood a conversation she had with Omwenga in December 2005 where he said “not to worry.” She claims this statement by Omwenga also led her to believe that her removal proceedings were closed and that she need not attend the February 13, 2006, hearing. On May 23, 2006, the IJ *908 denied Gitau’s motion to reopen, noting that regardless of any misunderstandings Gitau had in December 2005, both Gitau and Omwenga were orally notified of the February 13, 2006.
D. Appeal to BIA
Gitau retained new counsel and timely appealed the IJ’s denial of her motion to reopen on June 20, 2006. There, Gitau alleged that exceptional circumstances, namely Omwenga’s ineffective assistance of counsel, caused her failure to appear at the February 13, 2006, removal hearing. In the affidavit in support of this appeal, Gitau claimed that Omwenga led her to believe that she did not have to attend the last removal hearing, and, in fact, told her not to go to the February 13, 2006, hearing. She also included a bar complaint that she filed against Omwenga, as well as copies of bar complaints against Omwenga filed by others. Omwenga responded to these allegations by stating that he never told Gitau not to attend the hearing and that, in fact, he waited for a call from the IJ on February 13, 2006, but he was never contacted to appear telephonically.
On December 28, 2006, the BIA dismissed Gitau’s appeal, again emphasizing that both Gitau and Omwenga were given oral notice of the February 2006 hearing and that written notice was also sent to Omwenga. The BIA also noted that in the appeal, Gitau inconsistently claimed that she misunderstood Omwenga to say that she did not need to appear, and that he outright told her not to appear. The BIA held that Gitau failed to establish exceptional circumstances for her failure to appeal.
E. Second Motion to Reopen/Reconsider (Before the BIA)
Gitau filed a second motion to reopen and motion to reconsider on January 29, 2007, offering “new evidence” comprised of an affidavit by Kathryn Weber, an attorney who listened to tapes of Gitau’s immigration hearings. Weber surmised that the IJ never said Omwenga could appear telephonically at the February 2006 hearing, intimating that Omwenga was ineffective for not appearing in person. The BIA denied Gitau’s motions on March 30, 2007, noting that while Weber’s affidavit might show Omwenga’s dereliction, there was still no evidence that Omwenga advised Gitau outright not to go to the hearing.
II. DISCUSSION
We review decisions denying motions to reopen or reconsider for an abuse of discretion. Habchy v. Gonzales, 471 F.3d 858, 861 (8th Cir.2006). An agency abuses its discretion when it makes a decision without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, fails to consider all factors presented by the alien, or distorts important aspects of the claim. Id. at 861-62.
On appeal, Gitau places great emphasis on the precedential application of In re Grijalva-Barrera, 21 I. & N. Dec. 472 (BIA 1996). In Grijalva-Barrera, the BIA held that a counsel’s erroneous instruction not to appear at a hearing could constitute exceptional circumstances for missing a hearing. Id. at 473. The application of Grijalvar-Barrera in this case, however, is limited by the BIA’s determination that here, Omwenga did not tell Gitau not to attend the hearing, as Gitau claims, but rather that Gitau just misunderstood what Omwenga was telling her. Further, in Grijalvar-Barrera, the petitioner’s former counsel, whose employee told the petitioner not to attend the hearing, affied to that very fact, unlike the current situation before this panel. Id. at 474. We cannot find that Gitau was “blatantly misled regarding [her] need to appear at *909 the scheduled hearing,” as was the alien in Grijalva-Barrera. Id.
Gitau further argues that the BIA effectively made an adverse credibility finding against her, which is true. She claims this finding is not supported by specific and cogent reasons and is not anchored in the record. Gitau may be correct about the fact that the BIA did not provide many reasons why it rejected Gitau’s version of the events, but it clearly held that Gitau was inconsistent in her appeal documents as to why she missed the February hearing, which satisfactorily supports the BIA’s determination. Gitau reminds us that the initial affidavit stating that Gitau misunderstood Omwenga, and not that she was directed by Omwenga not to attend the hearing, was submitted while Omwenga was still Gitau’s counsel, implying that Omwenga fashioned a self-serving affidavit on Gitau’s behalf. This may explain some of the inconsistencies. Nonetheless, there are inconsistencies, and we cannot say that the BIA abused its discretion. Further, as the BIA pointed out, even though Weber’s affidavit might support a conclusion that Gitau’s attorney had many shortcomings, it does not establish that Omwenga advised Gitau to avoid the February 2006 hearing. Regardless of how we interpret the evidence amassed by Gitau before the BIA, there is not enough to support a reversal in the face of the abuse of discretion standard.
III. CONCLUSION
All in all, even if we conclude that Om-wenga failed to adequately represent Gi-tau, we have no basis to find that the BIA abused its discretion in upholding the IJ’s in abstentia order. We therefore deny the petition.

. In April 2006, Gitau did file a copy of the United States Citizenship Immigration Service's approval of her widower petition with the IJ as supplemental documentation in support of her then-pending motion to rescind the in abstentia order of removal. However, the removal proceedings and the widower petition were wholly separate and the approval of the latter had no direct effect on the former.