# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2842

_____

Jose Guadalupe Perez-Garcia

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

------------------------------

National Immigration Project of the National Lawyers Guild

*Amicus on Behalf of Petitioner*

_____

No. 15-1314

_____

Jose Guadalupe Perez-Garcia

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

------------------------------

National Immigration Project of the National Lawyers Guild

*Amicus on Behalf of Petitioner*

_____

Petition for Review of an Order of the
DHS Homeland Security

_____

Submitted: March 15, 2016
Filed: July 19, 2016

_____

Before WOLLMAN, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jose Perez-Garcia petitions for review of orders of the Department of Homeland Security ("DHS") reinstating a removal order and denying Perez-Garcia's motion to reopen the reinstatement order. Regarding the reinstatement, Perez-Garcia contends that because he was not subject to a prior order of removal, DHS did not establish the necessary elements for reinstatement, that he was not given due process, and that DHS's selection of him for reinstatement as opposed to affording a new removal hearing was arbitrary and capricious. Perez-Garcia argues that DHS erred in denying his motion to reopen because he demonstrated that he was never subject

to an order of removal, and at the least, a genuine issue of fact exists.[1] We deny his petitions.

I.

Perez-Garcia is a citizen and national of Mexico. He first entered the United States without inspection in May 1996. In June 1998, he was issued a Notice to Appear for removal proceedings in immigration court. On November 19, 1998, the immigration judge granted Perez-Garcia voluntary departure in lieu of removal, requiring Perez-Garcia to post a $5,000 bond. Under the voluntary departure order, Perez-Garcia was required to leave the United States by March 19, 1999, in which case he would be able to present evidence of his departure and reclaim the $5,000 bond. If Perez-Garcia failed to leave the United States by this time, his order would automatically convert to a removal order and his bond would be breached. The alternate order of removal became effective in the absence of evidence of compliance with the grant of voluntary departure and the bond was in fact breached. Perez-Garcia was apprehended by immigration officials in May 2000 and removed to Mexico, pursuant to the November 19, 1998 order of removal.

Perez-Garcia returned to the United States at some point and remained until 2014. On July 30, 2014, he was detained by DHS. Perez-Garcia was provided with an interpreter and informed that he could speak with an attorney. He made a sworn statement, answered questions, and indicated he did not wish to make any additional statements. He was issued a notice reinstating his prior order of removal.

---

[1]Perez-Garcia also contends that this court should remand for a determination of whether Perez-Garcia is an enforcement priority, because of policy changes that occurred during this case. However, Perez-Garcia provides no precedent for such a determination, and DHS has confirmed that Perez-Garcia, based on his individual circumstances, is not subject to prosecutorial discretion.

However, Perez-Garcia states that he left the United States and returned to Mexico on March 19, 1999, in accordance with his grant of voluntary departure, and was apprehended by DHS only after he had returned to the United States. He claims that he did not recognize the significance of complying with the grant of voluntary departure until hiring and speaking with counsel, following the July 30, 2014 reinstatement.

On August 5, 2014, Perez-Garcia filed a petition for review with this court (Case No. 14-2842) challenging the reinstatement order and requesting a stay of removal on the basis that he had not been subject to a prior order of removal because he had indeed timely voluntarily departed the United States. On August 6, 2014, Perez-Garcia filed a Motion to Reopen and Rescind the Reinstatement Order and an Application for Stay of Deportation or Removal with DHS. We denied Perez-Garcia's motion for stay of removal on August 6, 2014, and DHS denied his application for stay of removal on August 7, 2014. Perez-Garcia was removed to Mexico on August 8, 2014, separating him from his United States citizen wife and four United States citizen children. Perez-Garcia submitted, with his motion to reopen the reinstatement order, his sworn declaration and a "Forma Migratoria Estadistica" ("F.M.E."), a form given to Mexican citizens when they arrive or depart from a port of entry in Mexico. Both stated that he had timely departed to Mexico under his grant of voluntary departure in March 1999. On October 23, 2014, Perez-Garcia filed a supplemental Motion to Reopen and Rescind the July 30 Reinstatement Order, providing additional documents.[2] DHS denied Perez-Garcia's motion to reopen and rescind the reinstatement on January 28, 2015. On February 10, 2015, Perez-Garcia filed a second petition for review before this court (Case No. 15-1314), challenging DHS's denial of his motion to reopen. These cases were consolidated for review. 8 U.S.C. § 1252(b)(6). Both petitions are timely. See 8 U.S.C. § 1252(b)(1).

---

[2]We grant Petitioner's October 28, 2014 Unopposed Motion to Supplement the Record in Case No. 14-2842.

In Case No. 14-2842, Perez-Garcia claims that DHS erred in reinstating his prior removal order without sufficient evidence, without providing due process, and without considering Perez-Garcia's potential eligibility for relief. This court has jurisdiction over petitions for review of reinstated orders of removal. Ochoa-Carrillo v. Gonzales, 437 F.3d 842, 843 (8th Cir. 2006). DHS has the authority to issue a reinstatement order without a hearing before an immigration judge when the individual "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). DHS must establish by clear and convincing evidence (1) a prior order of removal; (2) a subsequent departure from the United States under that order; and (3) an illegal reentry. 8 C.F.R. § 241.8(a).

This court's review only addresses those issues "establishing the agency's right to proceed under [8 U.S.C. § 1231(a)(5)]—the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." Molina Jerez v. Holder, 625 F.3d 1058, 1062 (8th Cir. 2010). "Our review is limited to the agency's certified administrative record." Ochoa-Carrillo, 437 F.3d at 843; see 8 U.S.C. § 1252(b)(4)(A). We review for substantial evidence, so we will not overturn DHS's factual findings unless "it would not be possible for any reasonable fact-finder to come to the conclusion reached by the administrator." Menendez-Donis v. Ashcroft, 360 F.3d 915, 918-19 (8th Cir. 2004); see 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). If substantial evidence on the administrative record as a whole supports DHS's decision to reinstate Perez-Garcia's 1998 order for removal, we must deny his petition. See Ochoa-Carrillo, 437 F.3d at 846. We have jurisdiction to hear Perez-Garcia's due process claims as well. See id. at 847.

Perez-Garcia contends that DHS failed to meet its burden because he left voluntarily and had only been subject to a grant of voluntary departure. Because Perez-Garcia left voluntarily on March 19, 1999, he claims that he cannot have been subject to an alternate order of removal. The government counters that when Perez-Garcia was apprehended on July 30, 2014, DHS obtained the 1998 Order of Voluntary Departure from the Immigration Judge, which stated that if Perez-Garcia did not comply, "the following shall thereupon become immediately effective: respondent shall be removed to Mexico." DHS determined that because the order was executed in May 2000, Perez-Garcia had failed to comply with the voluntary departure order and was subject to an order of removal. DHS also verified that Perez-Garcia was one and the same as the person subject to the 1998 removal order and that he had reentered the United States since that time. A.R. 199-206, 209, 212-13. Perez-Garcia was provided with an interpreter and an opportunity to consult an attorney, but made no indication that he had complied with the 1998 order. Indeed, the government points out that Perez-Garcia was presented with the Form I-871 stating that Perez-Garcia was an alien subject to removal, but Perez-Garcia still did not claim compliance or submit any evidence of compliance during the reinstatement proceeding. Instead, he chose not to make a statement. On this basis, we find that substantial evidence supports DHS's decision to reinstate Perez-Garcia's prior order of removal. See Ochoa-Carrillo, 437 F.3d at 846.

Perez-Garcia further contends that the reinstatement proceedings violated his right to due process. "Although resident aliens have a right to due process in immigration proceedings, the constitutional sufficiency of procedures provided in any situation . . . varies with the circumstances." Id. at 846-47 (internal quotation marks omitted). Both parties agree that in order for Perez-Garcia to establish a due process claim, he must show that had he received a hearing, he would not have been subject to reinstatement. See Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir. 2003) (citing United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995) ("Actual prejudice exists where defects in the deportation proceedings may well have

resulted in a deportation that would not otherwise have occurred." (internal quotation marks omitted))). But here, Perez-Garcia indicated that he did not wish to contest the determinations on the Form I-871 in July 2014. Further, there is no indication that Perez-Garcia challenged his removal in 2000. With this background, we cannot conclude that had Perez-Garcia received a hearing, he would have provided evidence of his alleged 1999 departure. Further, as discussed below, DHS did in fact consider Perez-Garcia's evidence of voluntary departure, including his statement and F.M.E., when it denied his motion to reopen and rescind, but did not find it convincing. Perez-Garcia cannot establish the prejudice required to establish a due process violation.

Finally, Perez-Garcia argues that DHS's procedure in deciding to reinstate a removal order rather than issue a notice to appear to Perez-Garcia was arbitrary and capricious, because Perez-Garcia would be eligible for relief in removal proceedings. However, we have held that the streamlined reinstatement procedures under 8 C.F.R. § 241.8 are a valid interpretation of the Immigration and Nationality Act. Ochoa-Carrillo, 437 F.3d at 846. And we find persuasive the government's argument that 8 U.S.C. § 1252(g) forecloses our review of the decision to reinstate rather than issue notice to appear. 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."). Accordingly, we deny Perez-Garcia's petition for review of his reinstatement.

III.

Next, in Case No. 15-1314, Perez-Garcia argues that DHS erroneously denied his motion to reopen the reinstatement in light of evidence that Perez-Garcia had voluntarily left the United States in compliance with his 1998 grant of voluntary departure. Perez-Garcia claims that DHS erred in not accepting his F.M.E., not

-7-

relying on his affidavit, and requiring him to provide United States government forms. Alternatively, Perez-Garcia argues that this court could find a genuine issue of material fact regarding whether Perez-Garcia timely departed, in which case we must remand to the district court or transfer the matter to the Board of Immigration Appeals. All parties agree that this court has jurisdiction to review DHS's denial on the merits of Perez-Garcia's motion to reopen the reinstatement in this case.[3] Decisions denying requests to reopen are reviewed for an abuse of discretion. Gitau v. Mukasey, 520 F.3d 906, 908 (8th Cir. 2008). "An agency abuses its discretion when it makes a decision without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, fails to consider all factors presented by the alien, or distorts important aspects of the claim." Id. Our review is limited to the administrative record. 8 U.S.C. § 1252(b)(4)(A); Ochoa-Carrillo, 437 F.3d at 843.[4]

A party who establishes that he complied with a grant of voluntary departure is not subject to reinstatement of the prior order of removal. 8 C.F.R. § 1241.7; 8 C.F.R. § 241.8(a). Perez-Garcia claims he provided sufficient evidence establishing that he complied with his grant of voluntary departure. With his petition to reopen, Perez-Garcia provided his affidavit and a photocopy of an F.M.E. In its denial of Perez-Garcia's motion, DHS noted that Perez-Garcia breached his $5,000 departure bond because he had not submitted any evidence verifying his departure in 1999; that nothing suggests Perez-Garcia contested his removal in 2000 when he was apprehended; and that when he was again apprehended in 2014, Perez-Garcia indicated that he did not want to make a statement. DHS further noted that Perez-

_____

[3]Because the parties are in agreement that we have jurisdiction to review the denial of the motion to reopen the reinstatement, and we deny Perez-Garcia's petition, we decline to address jurisdiction further.

[4]Accordingly, we deny Perez-Garcia's August 10, 2015 Motion to take Judicial Notice in Case No. 14-2842.

Garcia did not submit any United States documents verifying his voluntary departure, that Perez-Garcia was unable to provide authentication of his photocopy of an F.M.E., and that DHS did not find Perez-Garcia's own statement that he departed persuasive. A.R. 2.

Perez-Garcia interprets regulations listing affidavits as a form of evidence, which he contends are applicable to the review of motions to reopen, to mean that Perez-Garcia's affidavit must be relied upon and trusted. However, even if affidavits can constitute reliable evidence in the review of motions to reopen a reinstatement, it does not mean that DHS must find every affidavit to be reliable. In this case, Perez-Garcia repeatedly failed to claim timely departure at junctures when such a claim could have benefitted him greatly. Perez-Garcia did not make this claim when it could have helped him reclaim his $5,000 bond in 1999 or avoid removal in 2000, or when he was initially apprehended in 2014. Thus, it was not unreasonable for DHS, in weighing the available information, to find Perez-Garcia's affidavit not credible.

Next Perez-Garcia contends that DHS was required to accept and rely on his copy of an F.M.E. He points to 8 C.F.R. § 1287.6(c), which states that a public document from a country that is a signatory of the Convention Abolishing the Requirement of Legislation for Foreign Public Document may be evidenced by an official publication or by a copy properly certified under that convention. However, this does not mean that a photocopy without certification must be accepted. And DHS's denial explains that the F.M.E. was considered and that DHS did request an authenticated copy; DHS simply determined that without further authentication, the F.M.E. was not persuasive. See Xiu Ling Chen v. Holder, 751 F.3d 876, 879-80 (8th Cir. 2014) (acknowledging that documents can be authenticated through other means than § 1287.6, but finding that the Board of Immigration Appeals was correct to find specific documents not "genuine, authentic, and objectively reasonable evidence" when they were not sufficiently authenticated in any manner).

Finally, while DHS noted Perez-Garcia's lack of United States government forms documenting his departure in its denial, it did not intimate that such forms were required. DHS examined the evidence provided and reached a rational decision. Although Perez-Garcia requests remand for the development of further factual findings, he cannot point us to a case in which a grant was given under similar circumstances.

IV.

Perez-Garcia, the father and caregiver of four United States citizen children, is a sympathetic petitioner. However, we cannot find that DHS erred in its determinations. Both petitions are denied.

_____

-10-