# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2232

_____

Jesus Lara-Nieto

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

No. 18-3383

_____

Jesus Lara-Nieto

*Plaintiff - Appellant*

v.

Chad Wolf, Acting Secretary, Department of Homeland Security; Peter Berg, District Director, U.S. Immigration & Customs Enforcement (ICE); William P. Barr, Attorney General of the United States

*Defendants - Appellees*[1]

_____

[1]Appellee Wolf is automatically substituted for his predecessor under Fed. R. App. P. 43(c)(2).

No. 18-3385

_____

Jesus Lara-Nieto

*Plaintiff - Appellant*

v.

Chad Wolf, Acting Secretary, Department of Homeland Security; Mario Ortiz, District Director, U.S. Immigration & Customs Enforcement (ICE); Peter Berg, District Director, U.S. Immigration & Customs Enforcement (ICE); William P. Barr, Attorney General of the United States

*Defendants - Appellees*[2]

_____

Petition for Review of an Order of the
Board of Immigration Appeals
with

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: October 16, 2019
Filed: December 27, 2019

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

_____

[2]Appellee Wolf is automatically substituted for his predecessor under Fed. R. App. P. 43(c)(2).

-2-

In this consolidated appeal, Jesus Lara-Nieto petitions for review of an order of the Department of Homeland Security (DHS) reinstating a prior order of removal and appeals the dismissal of his related complaints that were filed in federal district court. Having jurisdiction under 8 U.S.C. § 1252(a) and 28 U.S.C. § 1291, we deny his petition for review in the lead case and affirm the district court[3] in the consolidated cases.

I.

Jesus Lara-Nieto, a citizen of Mexico, unlawfully entered the United States in 1993. In 2003, he was convicted of "Assault-Family Violence" in Texas state court. Lara-Nieto was later served with a Notice of Intent to Issue a Final Administrative Removal Order (Notice of Intent), charging him with removability as an alien convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). In describing the type of aggravated felony that Lara-Nieto committed, the Notice of Intent erroneously referred to § 101(a)(43)(B) of the Immigration and Nationality Act (INA), which defines an aggravated felony, in part, as certain drug-trafficking offenses. See 8 U.S.C. § 1101(a)(43)(B). It did, however, refer to Lara-Nieto's conviction for "Assault-Family Violence" in the factual allegations supporting removability.

After affording Lara-Nieto an opportunity to respond, immigration authorities issued a Final Administrative Removal Order on July 1, 2003 (Removal Order). The Removal Order stated that Lara-Nieto was convicted of an aggravated felony under § 101(a)(43)(F) of the INA, which defines an aggravated felony, in part, as a crime of violence. See 8 U.S.C. § 1101(a)(43)(F). On July 15, 2003, Lara-Nieto was removed from the United States.

_____

[3]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

At some point thereafter, Lara-Nieto illegally reentered the country. On April 27, 2018, DHS reinstated the Removal Order pursuant to 8 U.S.C. § 1231(a)(5). After indicating that he was afraid to return to Mexico, Lara-Nieto participated in a reasonable-fear interview via telephone with a DHS asylum officer on May 8, 2018. During the interview, Lara-Nieto testified that he feared returning to Mexico because his hearing impairment would lead to him being persecuted and make it difficult for him to find work. He also stated that he believed that he and his family would be in danger if they returned to Mexico, as individuals who return to Mexico from the United States are perceived as wealthy and are often extorted by criminals. The asylum officer, however, found that Lara-Nieto failed to establish a reasonable fear of persecution on the basis of a protected ground or that he would be tortured if removed from the United States.

Lara-Nieto subsequently appealed the asylum officer's reasonable-fear determination to an immigration judge (IJ). The IJ similarly found no reasonable fear of persecution on the basis of a protected ground or that Lara-Nieto would be tortured. Although Lara-Nieto also challenged the validity of the Removal Order, the IJ declined to reach the merits of that order for jurisdictional reasons. The IJ's denial of Lara-Nieto's appeal became the final agency decision. See 8 C.F.R. §§ 208.31(g)(1), 1208.31(g)(1); see also Cardoza Salazar v. Barr, 932 F.3d 704, 706 n.2 (8th Cir. 2019). Neither the asylum's officer's written findings nor the IJ's order clearly distinguish between Lara-Nieto's claims for withholding of removal and claims for protection under the Convention Against Torture (CAT); rather, they simply find that he failed to demonstrate a reasonable fear of either persecution or torture.

Lara-Nieto petitioned for review of the order reinstating the Removal Order in this Court, and while his petition was pending, he filed two lawsuits in federal district court in which he sought review of DHS's reinstatement of the Removal Order and to compel DHS to adjudicate a motion to reopen. He also moved for temporary

-4-

restraining orders to prevent his removal from the United States. The district court, however, denied his motions and dismissed both lawsuits for lack of jurisdiction. Lara-Nieto timely appealed the dismissal of his lawsuits, and those appeals were consolidated with his petition for review.

## II.

We first consider whether the district court correctly dismissed Lara-Nieto's complaints. This Court reviews de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction. See Mohamed v. Melville, 274 F. App'x 495, 496 (8th Cir. 2008) (per curiam) (citing Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008)).

Lara-Nieto argues that, because the circumstances surrounding the entry of the Removal Order constitute a "gross miscarriage of justice," the district court had jurisdiction to review DHS's order reinstating the Removal Order pursuant to § 1231(a)(5). We find his argument unpersuasive. Indeed, the relevant statute says that "[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). We have interpreted this to mean that the federal courts of appeals have exclusive jurisdiction to consider the propriety of orders reinstating prior orders of removal. See Molina Jerez v. Holder, 625 F.3d 1058, 1072 (8th Cir. 2010) ("We agree with the district court's statement that jurisdiction to review the propriety of the Reinstatement Order rests with the court of appeals."); Ochoa-Carrillo v. Gonzales, 446 F.3d 781, 782 (8th Cir. 2006) ("[J]udicial review in the appropriate court of appeals is the sole and exclusive means to review a § 1231(a)(5) order reinstating a prior removal order[.]" (internal quotation marks omitted)). Accordingly, the district court correctly dismissed Lara-Nieto's complaints for lack of subject-matter jurisdiction.

III.

Next, we consider whether DHS properly reinstated the Removal Order. This Court reviews reinstatement of a prior removal order for substantial evidence and will not "overturn DHS's factual findings unless it would not be possible for any reasonable fact-finder to come to the conclusion reached by the administrator." Perez-Garcia v. Lynch, 829 F.3d 937, 940-41 (8th Cir. 2016) (internal quotation marks omitted).

Section 1231(a)(5) creates a streamlined process for reinstating prior removal orders, and it authorizes the Attorney General to reinstate a prior removal order after finding that an individual has illegally reentered the United States following removal or voluntary departure pursuant to a removal order. See Perez-Garcia, 829 F.3d at 940. DHS need only show, by clear and convincing evidence, that (1) there is a prior order of removal; (2) a subsequent departure from the United States pursuant to that order; and (3) an illegal reentry. Id. The alien may then be removed from the United States pursuant to the reinstated removal order. See id.

Lara-Nieto's petition for review is predicated on a collateral challenge to the underlying Removal Order, which he argues is legally infirm. Specifically, he complains that: (1) the Notice of Intent erroneously charged Lara-Nieto with committing an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(B) (defining an aggravated felony, in part, as a controlled substance offense); and (2) the Notice of Intent and Removal Order failed to identify the state statute under which Lara-Nieto was actually convicted. Thus, Lara-Nieto asserts that DHS failed to adequately charge and prove the basis for removability in 2003, and he now argues that DHS's reinstatement of the Removal Order constitutes a "gross miscarriage of justice" and violates his due process rights.

The reinstatement statute, however, prevents Lara-Nieto from attacking the validity of the underlying Removal Order in a petition for review of the reinstatement order. See 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal is . . . not subject to being reopened or reviewed . . . ."); see also Torres-Tristan v. Holder, 656 F.3d 653, 656 (7th Cir. 2011) (declining to entertain challenge to underlying removal order in a petition for review of an order reinstating removal order); Garcia-Villeda v. Mukasey, 531 F.3d 141, 150 (2d Cir. 2008) (same). Put simply, "[i]n a challenge to reinstatement of a prior final order of removal, our jurisdiction is limited to the reinstatement itself and we may not reopen or review the prior order." Mendez-Gomez v. Barr, 928 F.3d 728, 732 (8th Cir. 2019); see also Gomez-Olvera v. Napolitano, 451 F. App'x 611, 613 (8th Cir. 2012) (per curiam) ("We cannot review the underlying order, however, in light of the reinstatement statute . . . . Accordingly, [petitioner's] contention that the [prior removal order] was legally erroneous must fail.").

Accordingly, we lack jurisdiction to consider Lara-Nieto's arguments concerning the validity of the underlying Removal Order. Our review is limited to "those issues establishing the agency's right to proceed under [8 U.S.C. § 1231(a)(5)]—the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." Perez-Garcia, 829 F.3d at 940 (alteration in original) (internal quotation marks omitted). As Lara-Nieto concedes his identity, the existence of the Removal Order, and that he unlawfully reentered the United States, we find that substantial evidence supported DHS's decision to reinstate the Removal Order.[4]

---

[4]Although 8 U.S.C. § 1231(a)(5) strips us of our jurisdiction to review the Removal Order, it is worth noting that other circuits have held that the savings provision in 8 U.S.C. § 1252(a)(2)(D) may confer jurisdiction over constitutional claims and legal challenges related to an underlying removal order. See, e.g., Luna-Garcia De Garcia v. Barr, 921 F.3d 559, 564-65 (5th Cir. 2019). These circuits, however, have almost uniformly held that § 1252(a)(2)(D) is subject to the 30-day

IV.

Finally, we consider whether the IJ erred in determining that Lara-Nieto was ineligible for withholding of removal or protection under CAT. "We review [the] denial of an application for withholding of removal or CAT protection under the deferential substantial evidence standard." Mendez-Gomez, 928 F.3d at 733 (internal quotation marks omitted).[5]

"To qualify for withholding of removal, an applicant must show a clear probability . . . that his . . . life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." Mouawad v. Gonzales, 485 F.3d 405, 411 (8th Cir. 2007) (internal quotation marks and citations omitted). The applicant must also demonstrate that "any future persecution would be carried out by the government or by a group the government is unable or unwilling to control." De

filing deadline of § 1252(b)(1)—therefore, in order to use § 1252(a)(2)(D) to challenge an underlying removal order, an alien must file his petition for review within 30 days of the date of the underlying removal order, not within 30 days of the date of the order reinstating the removal order. See id.; Verde-Rodriguez v. Att'y Gen. United States, 734 F.3d 198, 203 (3d Cir. 2013); Cordova-Soto v. Holder, 659 F.3d 1029, 1031-32 (10th Cir. 2011). But see Vega-Anguiano v. Barr, 942 F.3d 945, 946 (9th Cir. 2019). Because that 30-day period has long since expired, we need not determine whether 8 U.S.C. § 1252(a)(2)(D) vests this Court with jurisdiction to consider Lara-Nieto's collateral challenge to the Removal Order.

[5]The government urges us to apply an even more deferential "facially legitimate and bona fide reason" standard of review. Because we can affirm under the more generous substantial evidence standard, we need not consider this issue. See Hernandez-Aquino v. Barr, 770 F. App'x 88 (Mem), 88 n.2 (4th Cir. 2019) (assuming, without deciding, that the substantial evidence standard of review applies because the petitioner's claims fail under that standard); cf. Andrade-Garcia v. Lynch, 828 F.3d 829, 836 (9th Cir. 2016) (rejecting the "facially legitimate and bona fide reason" standard and instead applying a substantial evidence standard).

Castro-Gutierrez v. Holder, 713 F.3d 375, 381 (8th Cir. 2013). "[A]n alien seeking to establish persecution based on the violent conduct of private actors must show more than difficulty controlling private behavior. Instead, [he] must show that the government condoned it or at least demonstrated a complete helplessness to protect the victims." Id. (internal quotation marks and citations omitted).

To obtain relief under CAT, "an alien must instead establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Mouawad, 485 F.3d at 413 (internal quotation marks omitted). Importantly, "[t]he torture must be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Cambara-Cambara v. Lynch, 837 F.3d 822, 826 (8th Cir. 2016) (internal quotation marks omitted). "A government does not acquiesce in the torture of its citizens merely because it is aware of the torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Mouawad, 485 F.3d at 413 (internal quotation marks and citations omitted).

We see no error in the IJ's determination that Lara-Nieto failed to show that he is eligible for withholding of removal. Even if we assume, without deciding, that individuals returning to Mexico after living in the United States and individuals with hearing impairments constitute cognizable social groups, Lara-Nieto did not demonstrate a reasonable possibility he would actually be persecuted on the basis of a protected ground should he return to Mexico. First, to the extent Lara-Nieto argues that he fears generalized violence in Mexico or extortion by criminals as an individual returning to Mexico after living in the United States, his argument fails because he did not offer sufficient proof suggesting that he is actually at risk of persecution by private actors and that the government of Mexico is unable or unwilling to prevent it. Harm arising from such general country conditions does not ordinarily support a claim of persecution. See Malonga v. Holder, 621 F.3d 757, 766 (8th Cir. 2010).

-9-

Second, Lara-Nieto's arguments about persecution arising from his hearing impairment are also unpersuasive. Indeed, he testified that he was never physically harmed or threatened while in Mexico because of his hearing impairment or any other reason. The fact that his disability might hinder his ability to secure employment and medical attention and may cause others to discriminate against him, while unfortunate, does not rise to the level of persecution. See id. (non-specific threats, or those lacking in immediacy, do not amount to persecution); see also Krasnopivtsev v. Ashcroft, 382 F.3d 832, 839 (8th Cir. 2004) (noting that "low-level types of intimidation or harassment are not sufficiently severe" to constitute persecution).

Similarly, we find no error in the IJ's determination that Lara-Nieto is ineligible for relief under CAT. As discussed above, the asylum officer's written findings and the IJ's order do not clearly discuss the basis for his claim for protection under CAT—instead, they simply state that he has not shown a reasonable fear of torture. Lara-Nieto has not pointed us to any facts in the record that would sustain a claim for protection under CAT, and he does not appear to present any argument in his brief that he would be tortured if removed to Mexico. See Martine v. Lynch, 840 F.3d 1002, 1005 (8th Cir. 2016) ("'Torture' is separately defined and is not synonymous with 'persecution.'").

V.

For these reasons, we deny the petition for review in the lead case and affirm the district court in the consolidated cases.

_____