# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1531

_____

Alvaro Cruz Rodriguez, also known as Juan Javier Cruz Rodriguez

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

No. 18-3164

_____

Alvaro Cruz Rodriguez, also known as Juan Javier Cruz Rodriguez

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 15, 2019
Filed: March 16, 2020

_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.
_____

BEAM, Circuit Judge.

In this consolidated appeal, Alvaro Cruz Rodriguez petitions for review of the Board of Immigration Appeals' (BIA) denial of his application for cancellation of removal (No. 18-1531) and denial of his motion to reopen and reconsider (No. 18-3164). For the reasons stated herein, we deny each petition.

## I.    BACKGROUND

Petitioner Rodriguez entered the United States in 1998 without inspection or admission and lived in the Minneapolis area with his common-law wife, Rosa, and two of his three children, ages 20, 18, and 16 (at the time of the proceedings before the immigration judge (IJ)). He owned a home and was the primary breadwinner of the household. When he arrived in the United States, Rodriguez worked with temporary agencies and then in the restaurant industry, moving up the chain of command at Perkins in the Minneapolis area. Rodriguez ultimately owned his own restaurant in St. Paul where he employed as many as ten people at one time. Rodriguez paid taxes in the United States and did, for many years, allegedly claim as dependents individuals who might not have been appropriately claimed, thus potentially receiving tax refunds not due; one key topic of discussion before the IJ and the BIA.

Rodriguez's oldest child is a citizen of Mexico and his youngest two children are United States citizens. Rodriguez's testimony before the IJ, in part, focused on his claim that a hardship would result from his deportation, as he explained that his youngest daughter suffered from mental illness and that she would especially suffer if he were removed and unable to assist in her support and care. His daughter suffers from severe mental health issues including depression, panic attacks, insomnia, symptoms of agoraphobia and bouts of self-destructive behavior and violence toward

-2-

others. All of her symptoms increased with the stress of her father's deportation proceedings and his absence from the family. A treating psychologist testified about the daughter's illness at the hearing before the IJ, but acknowledged that the daughter feared leaving the home and would sometimes miss her therapy appointments.

The IJ noted that in June 2017, Rodriguez was arrested for alleged domestic assault. There were accusations of a violent altercation with Rosa. He was alleged to have choked her and threw her to the ground inside the restaurant. Objects were thrown and Rosa was physically injured with scrapes and bruises. The IJ reported three misdemeanor domestic assault charges pending and there were also prior allegations of abuse against Rosa. The previous reports were never proven, however, because Rosa did not cooperate with law enforcement's attempt to investigate those matters. There were also past allegations of drug use and sale, underage drinking, and drinking after hours at Rodriguez's restaurant.

Rodriguez claimed he could not support his family if he were removed to Mexico and he feared violence in Mexico. He would not bring his daughters to Mexico, as he was concerned that his youngest daughter would not receive sufficient care for her mental health issues there. However, he feared the family could not survive financially in the United States without him.

Because Rodriguez's continual presence in the United States was not questioned, and he had not been convicted of a specified offense that would bar discretionary relief, the only issue facing the IJ (and, later, the BIA) was whether (1) Rodriguez demonstrated exceptional and extremely unusual hardship, and (2) established that he had been a person of good moral character. 8 U.S.C. § 1229b(b)(1). The IJ held that Rodriguez had met his burden as to both elements. Of particular concern to the IJ was the daughter's significant mental health issues, which the IJ held were aggravated greatly by her father's absence, including an elevated risk of suicide. Too, because the restaurant provided the sole income for the family and the business would likely fail with Rodriguez's absence, the IJ found that this created a near-certain economic hardship. The IJ then balanced the remaining facts that

-3-

detracted from Rodriguez's good moral character in this matter, including the pending domestic assault charges; alleged issues and discrepancies, or both, with Rodriguez's tax filings; past allegations of abuse of a child by disciplining with a belt; and alleged illegal behavior after-hours at the restaurant. On balance, however, the IJ held that these negative factors did not outweigh the positive factors in the case, namely that Rodriguez had been in the United States for nearly 20 years, owned his own home, had no criminal convictions, worked his way up in the restaurant industry, supported his entire family, and was the glue that held their economic security together. The IJ thus exercised his discretion and, on September 12, 2017, granted Rodriguez relief in the form of cancellation of removal.

The Department of Homeland Security (DHS) appealed the IJ's decision and the BIA weighed the facts differently, ultimately denying Rodriguez the relief he sought. The BIA discussed Rodriguez's "three charges of domestic assault," referenced the corresponding police reports and noted that there had been alleged prior instances of abuse. The BIA additionally noted the allegation of Rodriguez's abuse of one of his children by striking her on the foot with a belt; reviewed the allegations of illegal activity in the restaurant after-hours; as well as the alleged tax errors for claiming non-immediate-family members as dependents for many years on his taxes. Looking at these factors, the BIA concluded that they outweighed the evidence reflecting positively on Rodriguez's moral character–his long presence in the United States, his lack of criminal convictions, his home ownership, his work history, and the potential effect (financial and emotional) of his deportation on his family, particularly on his youngest daughter. Notwithstanding these positive factors, the BIA held that "the respondent has not established the requisite 10-year period of good moral character in light of the adverse factors present in this case, most significantly his recent arrest, which resulted in the issuance of a no-contact order against the respondent." Accordingly, in February 2018, the BIA vacated the IJ's grant of cancellation of removal and ordered Rodriguez removed to Mexico. The record shows that Rodriguez was removed from the United States on March 13, 2018.

On March 12, 2018, Rodriguez petitioned this court, seeking review of the BIA's final order of removal dated February 28, 2018.[1] On March 13, 2018, Rodriguez filed a motion to reopen and reconsider the BIA's denial of cancellation of removal, arguing to the BIA that it made a factual error in its February 2018 decision when it stated that Rodriguez was arrested for three charges of domestic assault, as he was actually arrested on only two counts of domestic abuse and one charge of disorderly conduct. Rodriguez additionally cited new evidence, including an affidavit from Rosa; evidence that the charges of domestic assault in state court were eventually dismissed, and that he was only convicted of disorderly conduct; affidavits from his daughters and medical reports of their psychological and medical information; and affidavits from others as witnesses of Rodriguez's good character.

---

[1]Taken with the case in No. 18-1531 is a motion to strike filed by Respondent in which it challenges documents filed by Rodriguez in a supplemental appendix and discussed in Rodriguez's reply brief that Respondent claims are outside of the certified administrative record. That motion is granted. See 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"); see also Berte v. Ashcroft, 396 F.3d 993, 997 (8th Cir. 2005). Rodriguez attached to his petition in No. 18-1531 a copy of the final warrant of commitment on the state domestic assault charges, a copy of Rodriguez's petition to the state court to enter a plea of guilty to disorderly conduct, a copy of the state court docket sheet, an affidavit from Rosa, and what Rodriguez states is a copy of an email exchange in December 2017 and January 2018 between Rodriguez's legal counsel and ICE employees wherein his counsel sought Rodriguez's transfer from ICE detention to the district court of Dakota County for his state court hearing, which transfer he claims never occurred. Rodriguez attempted to supplement the record on appeal in case 18-1531 more than once by attaching multiple documents, such as those just listed, and others, that are outside the scope of the administrative record. We did not review this evidence in our analysis of 18-1531, as very plainly, "[o]ur review is limited to the agency's certified administrative record." Perez-Garcia v. Lynch, 829 F.3d 937, 940 (8th Cir. 2016) (quotation omitted). We recognize, however, that myriad of these same documents *are* part of the certified administrative record in case No. 18-3164 and are thus properly before us for review in that matter.

The BIA denied the motion to reopen and reconsider on September 26, 2018. In that order, the BIA acknowledged that it had previously erred in citing *three* domestic assault charges when there were only two, but found the error harmless; and noted that the letter from Rosa was previously available and thus did not warrant a remand. As to the update submitted regarding the dismissal of Rodriguez's two domestic assault charges, the BIA held that its decision denying Rodriguez relief remained unchanged because the BIA is free to consider the alleged behavior that led to the charges even if no conviction resulted. Also before the BIA, Rodriguez challenged the actions of DHS, alleging that it refused to transport him to state court for his criminal proceedings, which Rodriguez argued caused delay of those proceedings and allowed the BIA to use the pending charges against him in his immigration proceedings. He claimed those actions denied him due process, which the BIA held was beyond its purview to review. Accordingly, the BIA denied Rodriguez's motion to reopen and reconsider.

On October 9, 2018, Rodriguez petitioned this court to review the BIA's denial of his motion to reopen and reconsider (No. 18-3164), which matter was consolidated with the pending petition for review of the BIA's February order for purposes of argument and submission. We deny each petition.

## II. DISCUSSION

### A. Cancellation of Removal (No. 18-1531)

We first consider Rodriguez's argument that the BIA erred in denying his application for cancellation of removal. Aliens in removal proceedings may, under certain circumstances, be eligible for a "discretionary form of relief called cancellation of removal." Ali v. Barr, 924 F.3d 983, 985 (8th Cir. 2019). In order to qualify, Rodriguez must show: (1) continuous physical presence in the United States for at least ten years; (2) good moral character; (3) that he has not been convicted of certain crimes; and (4) that his "removal would result in exceptional and extremely

-6-

unusual hardship" to a qualifying relative. 8 U.S.C. § 1229b(b)(1). Both the BIA and the IJ balanced the good moral character and the hardship elements.

In Rodriguez's petition for review of the BIA's February 2018 order of removal, Rodriguez argues that ICE overtly and intentionally violated his due process rights by causing the resolution of his state law domestic abuse charges to be substantially delayed so that the pending charges would be used against him in the proceedings before the BIA. As previously noted, however, the evidence offered in support of that petition is not part of the administrative record on appeal. Because his claim uniquely rests on evidence that is not part of the administrative record, there is no factual basis before us in support of Rodriguez's claim. See Escoto-Castillo v. Napolitano, 658 F.3d 864, 866 (8th Cir. 2011) (denying a petition for review raising a legal question, in part, because alleged proof of the claimed legal error rested on a post-removal state court order that was not part of the administrative record on appeal). Rodriguez did, however, properly pursue this claim by filing his motion to reopen and reconsider, which we review below in No. 18-3164. Id.

More importantly, even were there evidence in the administrative record supporting the allegation, we lack jurisdiction to review the claim. The decision to grant cancellation of removal is a discretionary act by the Attorney General that this court may not review. 8 U.S.C. § 1252(a)(2)(B)(i). We may, however, review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D). The discretionary nature of the relief afforded by cancellation of removal, however, "amounts to a power to dispense mercy," and thus "an alien can have no constitutionally protected liberty interest in such speculative relief and cannot state a claim for a violation of due process rights." Guled v. Mukasey, 515 F.3d 872, 880 (8th Cir. 2008). "However broadly and amorphously the concept of constitutionally protected liberty interests has been defined within procedural-due-process jurisprudence, it does not include statutorily created relief that is subject to the unfettered discretion of a governmental authority." Nativi-Gomez v. Ashcroft, 344 F.3d 805, 809 (8th Cir. 2003). Accordingly, Rodriguez has "no right to due process in the purely discretionary remedy of cancellation of removal because no

-7-

constitutionally cognizable liberty interest arises from it," and his claim that the actions of ICE violated his due process rights in his agency proceeding is unavailing. Sanchez-Velasco v. Holder, 593 F.3d 733, 737 (8th Cir. 2010).

Rodriguez further claims that the BIA erred in its weighing of the many factors in this case regarding his good moral character and the relevant hardships. We lack jurisdiction to consider such a challenge, as this is precisely the discretionary determination Congress shielded from our review. See Apolinar v. Barr, 945 F.3d 1072, 1074-75 (8th Cir. 2019) (dismissing petition for lack of jurisdiction where alien essentially challenged how the BIA weighed the relevant hardship factors); Hamilton v. Holder, 680 F.3d 1024, 1027 (8th Cir. 2012) ("Since [Petitioner's] hardship argument is essentially a challenge to the BIA's weighing of evidence, we lack jurisdiction to review it."). We thus deny Rodriguez's petition for review of the BIA's denial of his application for cancellation of removal in case No. 18-1531.

### B.    Motion to Reopen and Reconsider (No. 18-3164)

Here, too, Rodriguez's cornerstone argument is that as a result of ICE's actions during his detention, or more specifically alleged inaction, he was forced to waive his right to be present at his then-pending state court criminal hearings, and he could not confront any witnesses used against him nor address what he claims was a "misleading and inaccurate account of events for which the erroneous criminal charges were based." He claims this significant delay directly affected his immigration proceedings because had the dismissal of those charges been timely and properly reviewed by the BIA, the agency could not have substantiated its decision to use his arrest and no-contact order as a basis to vacate the IJ's decision. Instead, the agency would have made the dismissal of his state criminal charges a pertinent and determinative part of his record. Proof of ICE's alleged overt, unconstitutional and intentional inaction was submitted by Rodriguez with his motion in the form of copies of emails between his counsel and ICE agents from December 2017 to January 2018 in which they discuss the execution of writs of habeas corpus seeking Rodriguez's transfer. The writs themselves do not appear in the record, nor does any

-8-

information regarding the dates of previously scheduled state court hearings that Rodriguez missed.

Again, "[a]s a threshold requirement to any due-process claim, . . . the alien must show that he or she has a protected property or liberty interest." Ibrahimi v. Holder, 566 F.3d 758, 766 (8th Cir. 2009). Fundamentally Rodriguez's claim fails because if the BIA had reopened the case, the issue was whether Rodriguez was entitled to cancellation of removal–a form of discretionary relief that Rodriguez has no constitutionally protected interest in receiving. Guerra-Soto v. Ashcroft, 397 F.3d 637, 640-41 (8th Cir. 2005); see also Vargas v. Holder, 567 F.3d 387, 391 (8th Cir. 2009) (holding that where the underlying determination is one seeking discretionary relief, there is no constitutionally protected liberty interest at stake and thus no due-process claim in the proceedings). We need go no further on Rodriguez's constitutional claim.

We next consider Rodriguez's claim that the BIA erred in denying Rodriguez's motion to reopen and reconsider its denial of cancellation of removal. We review the BIA's denial of the motion to reopen for abuse of discretion. Urrutia Robles v. Barr, 940 F.3d 420, 423 (8th Cir. 2019) (recognizing the Supreme Court's confirmation of the long-exercised judicial authority to review the BIA's denial of an alien's motion to reopen under a deferential abuse-of-discretion standard). A motion to reconsider must specify "the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R § 1003.2(b). "Motions to reopen and remand are disfavored because of the strong public interest in bringing litigation to a close and because granting them can allow endless prolongation of . . . proceedings." Salman v. Holder, 687 F.3d 991, 996 (8th Cir. 2012) (quotation omitted).

Here, Rodriguez again challenges what he claims to be the BIA's erroneous factual findings regarding the number of state criminal charges and his moral character, and he maintains that the BIA erred in reversing the determination of the IJ, as it did not balance the factors correctly. He claims that the extreme hardship that

would befall his children far outweighs any allegation of domestic abuse, drug use and sales, or tax inconsistencies that the BIA found more persuasive in its determination, an argument we are without jurisdiction to address. Guled, 515 F.3d at 880 (holding that argument that IJ improperly weighed factors in denying cancellation of removal essentially challenged adverse discretionary conclusion and did not present reviewable question of law outside of the jurisdictional bar).

As to his argument regarding factual errors made by the BIA, Rodriguez points to his own testimony before the IJ that contradicts facts relied upon by the BIA to establish the truth as he stated it. For example, he relies on the affidavit from Rosa disavowing the allegations of abuse alleged in the state court case to establish that she was not, in fact, abused as alleged in the police arrest report. He argues that this testimony was previously unavailable because Rosa was prohibited from testifying in immigration court because of a no-contact order against Rodriguez that remained in place, according to Rodriguez, because ICE refused to transport him to state court to resolve the matter. Finally, he points out that the state domestic assault charges were ultimately dropped in exchange for a guilty plea to disorderly conduct–a resolution that was not available to the BIA when it made its first determination, and which Rodriguez argues establishes that the state charges were erroneous.

"[T]he BIA abuses its discretion [in denying a motion to reopen and reconsider] only when its decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Esenwah v. Ashcroft, 378 F.3d 763, 765 (8th Cir. 2004) (quotation omitted). With this standard of review at the forefront, we find the BIA did not abuse its discretion in denying Rodriguez's motion. After reviewing Rodriguez's motion to reopen and reconsider, the BIA based its denial on a rational explanation. It acknowledged its mistake in finding three domestic assault charges when there were only two, but held that discrepancy had no effect on its ultimate determination; correctly noted that the statement from Rosa was previously available and thus

remand was not warranted on that basis;[2] and held that even with the dismissal of the state charges, it could still review the underlying conduct surrounding the arrest and because of that, its decision remained unchanged and there was thus no basis for reopening its February 2018 decision. Matter of Thomas, 21 I&N Dec. 20, 23 (BIA 1995). Accordingly, we find the BIA did not abuse its discretion when it declined to reopen and reconsider this case.

## III.  CONCLUSION

For the reasons elucidated above, we deny each petition.

_____

---

[2]Indeed, despite the no-contact order, there was discussion with the IJ at various hearings regarding Rosa's availability (or lack thereof given the no-contact order), including a discussion at the July 26, 2017, hearing wherein counsel for Rodriguez discussed his receipt that day of an affidavit from Rosa wherein she says she does not feel threatened by Rodriguez. In short, the information contained in Rosa's February 2018 affidavit was previously available.